# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #015

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2016**, are as follows:

**BY CRICHTON, J.**:

2015-CC-1754        RICHARD DUPUY AND HIS WIFE, MELISSA DUPUY v. NMC OPERATING
                    COMPANY, L.L.C. D/B/A THE SPINE HOSPITAL OF LOUISIANA, FORMERLY,
                    THE NEUROMEDICAL CENTER HOSPITAL (Parish of E. Baton Rouge)

                    For the reasons set forth above, we hold that the plaintiffs'
                    claims that the Hospital failed to properly maintain and service
                    equipment used in the sterilization of surgical instruments falls
                    within the Louisiana Medical Malpractice Act.  We therefore find
                    that the district court erred in denying the Hospital's second
                    exception of prematurity in part and find that the district court
                    should have granted the Hospital's second exception of
                    prematurity in its entirety.  The ruling of the district court is
                    reversed.
                    REVERSED.

SUPREME COURT OF LOUISIANA

NO. 2015-CC-1754

RICHARD DUPUY AND HIS WIFE, MELISSA DUPUY

VERSUS

NMC OPERATING COMPANY, L.L.C. D/B/A THE SPINE HOSPITAL OF LOUISIANA, FORMERLY, THE NEUROMEDICAL CENTER HOSPITAL

ON SUPERVISORY WRITS TO THE NINETEENTH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

**CRICHTON, Justice.**

This case concerns injuries plaintiff Richard Dupuy sustained post-operatively based on a hospital's alleged failure to properly maintain and service equipment utilized in the sterilization of surgical instruments. The issue before the Court is whether the plaintiffs' claims that the hospital failed to properly maintain and service equipment utilized in the sterilization of surgical instruments fall within the Louisiana Medical Malpractice Act ("MMA"). For the reasons set forth below, we find the claims do fall within the MMA and reverse the ruling of the district court.

## FACTS

Plaintiffs Richard and Melissa Dupuy (the wife of Richard Dupuy) filed suit against NMC Operating Co., L.L.C., d/b/a The Spine Hospital of Louisiana ("Hospital").[1] They allege that Mr. Dupuy developed a post-operative infection, osteomyelitis, following spine surgery, and the infecting organism was *mycobacterium fortuitum*. The plaintiffs filed a petition alleging, *inter alia*, that the Hospital "fail[ed] to properly sterilize and/or clean surgical instrumentation" used in the surgical procedure, and/or that "the nursing staff and/or employees" of

---

[1] On July 1, 2014, the NeuroMedical Center Surgical Hospital changed its name to The Spine Hospital of Louisiana. Plaintiffs amended their petition to reflect the name change.

the Hospital failed to use proper aseptic technique before surgery. They sought damages for Richard Dupuy's medical expenses, pain and suffering, mental anguish, loss of earnings capacity, disability, and loss of enjoyment of life, and for Melissa Dupuy's loss of society, support, and companionship.

The Hospital filed an exception of prematurity, arguing that the Hospital is a "qualified health care provider" under the MMA and the plaintiffs' claims had not first been presented to a medical review panel as required by La. R.S. 40:1231.8.[2] Before a hearing on that exception, the parties took the deposition of an infectious disease specialist that treated Mr. Dupuy following his surgery. The specialist testified that she was unable to pinpoint a specific cause of Mr. Dupuy's infection, noting that multiple "materials" could be the source.[3]

Shortly thereafter, the plaintiffs filed a first supplemental and amended petition, in which they added the following allegation in paragraph 2A:

> The defendant, NMC Operating Company, LLC, d/b/a The Spine Hospital of Louisiana, formerly, The NeuroMedical Center Surgical Hospital, failed to properly maintain and service all equipment utilized in the sterilization process including but not limited to, the washers and sterilizers used to sterilize the equipment used in Richard Dupuy's surgery of April 14, 2014.

In response, the Hospital filed a second exception of prematurity on the same grounds. The plaintiffs then filed a second supplemental and amended petition, alleging that, "in the absence of contamination from surgical instrumentation, materials or the surgical suite," the "likely source" of the infection was Floseal, a hemostatic matrix used in the procedure, which was manufactured by Baxter Healthcare Corporation, a manufacturer as defined in La. R.S. 9:2800.53.

---

[2] Redesignated from R.S. 40:1299.47 by H.C.R. 84 of 2015; Acts 2015 No. 323.

[3] She testified that "the most likely source was an instrument or material or something used during that procedure." She then added: "Most likely, there are, you know, pieces of metal or instruments, but if there was other gauze, we use cloths sometimes, if there were, you know, using those to get some blood or things like that during the surgery, if they're trying to clean it up, that can also be a source. I cannot be specific as to what."

2

After a hearing, the district court granted the exception of prematurity as to the original petition in its entirety. With respect to the first supplemental and amended petition, however, the district court granted the exception in part and denied it in part, dismissing the petition except for the allegations contained in paragraph 2A.[4] The Court of Appeal, First Circuit, denied the Hospital's writ without comment.[5] We granted the writ on October 30, 2015. *Dupuy v. NMC Operating Co., L.L.C. d/b/a The Spine Hospital of La.*, 2015-1754 (La. 10/30/15), --- So. 3d --- , 2015 WL 7721788.

According to the Hospital, the district court misapplied the factors in *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So. 2d 303, and failed to follow jurisprudence holding that one of the obligations a hospital owes a patient is to provide clean and sterile facilities. Plaintiffs, on the other hand, maintain that coverage under the MMA must be strictly construed, and argue that the *Coleman* factors point in favor of tort liability and against coverage under the MMA.

## LEGAL BACKGROUND

The dilatory exception of prematurity provided for in La. C.C.P. art. 926(1) questions whether the cause of action has matured to the point where it is ripe for judicial determination. *Williamson v. Hospital Service Dist. No. 1 of Jefferson,* 04-0451, p.4 (La. 12/1/04), 888 So. 2d 782, 785. *See also* Frank L. Maraist, 1 La. Civ. Law Treatise, Civ. Proc. § 6:6 (2d ed.) (updated Nov. 2015). Under the MMA, a medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La. R.S. 40:1231.8. *See also*

---

[4] Because the second supplemental and amended petition contained no new allegations against the Hospital (the new allegations were only against Baxter), the Hospital's exception of prematurity on the second supplemental petition was granted with consent of the parties.

[5] Judge McDonald dissented, writing: "One of the obligations of a hospital to a patient is to provide clean and sterile facilities; thus, the allegations contained in paragraph 2A constitute medical malpractice, and should be reviewed by a medical review panel prior to being filed in civil court. La. R.S. 40:1299.47(A); See *Cashio v. Baton Rouge Gen. Hosp.*, 378 So. 2d 182 (La. App. 1 Cir. 11/12/79). . . ."

*Williamson*, 04-0451, p.4, 888 So. 2d at 785; *Spradlin v. Acadia-St. Landry Med. Found.*, 98-1977, p.4 (La. 2/29/00), 758 So. 2d 116, 119. In such situations, a defendant's exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action, but instead asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. *Id.* The burden of proving prematurity is on the moving party, in this case the Hospital, which must show that it is entitled to a medical review panel, because the allegations fall within the MMA. *Williamson*, 04-0451, p.4, 888 So. 2d at 785.

This Court has, on numerous occasions, observed that the MMA was enacted by the Legislature in response to a "perceived medical malpractice insurance 'crisis.'" *Williamson*, 04-0451, p.4, 888 So. 2d at 785 (citations omitted). The legislature intended the MMA to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public. *Id.* To achieve those goals, the MMA gives qualified health care providers two advantages in actions against them for malpractice, namely, a limit on the amount of damages and the requirement that the claim first be reviewed by a medical review panel before commencing suit in a court of law. *Id. See also* La. R.S. 40:1231.2(B); La. R.S. 40:1231.8.

This Court has also emphasized that the MMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice," and that all other tort liability on the part of the qualified health care provider is governed by general tort law. *Williamson*, 04-0451, p.5, 888 So. 2d at 786. *See also Blevins v. Hamilton Med. Ctr., Inc.* 07-0127, p.6 (La. 6/19/07), 959 So. 2d 440, 444. Because the MMA's limitations on the liability of health care providers are in derogation of the rights of tort victims, the MMA is to

4

be strictly construed. *Williamson,* 04-0451 at p.5, 888 So. 2d at 786; *Blevins*, 07-0217, p.6, 959 So. 2d at 444.

In this case, the Hospital argues that Mr. Dupuy's infection falls within the definition of malpractice set forth in the MMA. The MMA defines **malpractice** as follows:

> "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La. R.S. 40:1231.1(A)(13). "**Health care**," in turn, is defined in the MMA as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. . . ." La. R.S. 40:1231.1(A)(9).

Cognizant of these principles, in *Coleman v. Deno,* 01-1517 (La. 1/25/02), 813 So. 2d 303, we set forth six factors to assist a court in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
>
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
>
> (3) whether the pertinent act or omission involved assessment of the patient's condition;

5

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

(5) whether the injury would have occurred if the patient had not sought treatment; and

(6) whether the tort alleged was intentional.

01-1517, p.17, 813 So. 2d at 315-16. *See also Williamson,* 04-0451, p.6, 888 So. 2d at 786-87; *Blevins*, 07-0217, p.7, 959 So. 2d at 445.

As explained by this Court in *Williamson*, *Blevins*, and other cases, in a trial of the exception of prematurity, a court analyzes the allegations of the petition under the *Coleman* factors to determine whether the allegations sound in medical malpractice. If the allegations sound in medical malpractice, the case must proceed in accordance with the protocol set forth in the MMA. If, on the other hand, the allegations sound in general negligence, the case should proceed under general tort law. *Williamson,* 04-0451, p.11, 888 So. 2d at 789; *Blevins*, 07-0217, pp.7-8, 959 So. 2d at 445.

## ANALYSIS

We first turn to the question of whether the Hospital is a "health care provider" under the MMA, as required by the definition of "malpractice." La. R.S. 40:1231.1(A)(10), La. R.S. 40:1231.1(A)(13). The plaintiffs do not contest that the Hospital is a qualified health care provider, and concede that this requirement is satisfied. The plaintiffs instead contend that the allegations in paragraph 2A do not fall within the MMA's definition of "health care" such that they constitute malpractice under La. R.S. 40:1231.1(A)(13). In order to determine whether the allegations sound in malpractice and fall within the ambit of the MMA, we analyze the factors set forth in *Coleman v. Deno*. Applying those factors, we conclude that the plaintiffs' allegation that the Hospital failed to properly maintain and service

6

all equipment utilized in the sterilization process, including, but not limited to, the washers and sterilizers used to sterilize the equipment used in plaintiff's surgery, constitutes medical malpractice under the MMA.

**(1) *Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill.***

We find that the allegation at issue here, that the Hospital failed to properly maintain and service the equipment utilized in the sterilization process, including, but not limited to, the washers and sterilizers used to sterilize the equipment used in Mr. Dupuy's surgery, is "treatment related." Other courts, applying the MMA, have found infectious diseases acquired during surgical procedures to be "treatment related," regardless of the particular source of the infection. We find those cases persuasive here. In *Cashio v. Baton Rouge General Hospital*, 378 So. 2d 182 (La. App. 1st Cir. 1979), the plaintiff died from a staph infection acquired during coronary bypass surgery, and the hospital filed an exception of prematurity. 378 So. 2d at 183. Though the trial court found the claims were not covered by the MMA and overruled the exception, the court of appeal reversed, finding: "While we do not attempt to supply a universal definition of treatment, we do hold that it does include the furnishing of a clean and sterile environment for all patients." *Id.* at 184. *See also McBride v. Earl K. Long Memorial Hosp.*, 507 So. 2d 821 (La. 1987) (finding that a suit filed by a plaintiff who contacted a staph infection during surgery was subject to the prescriptive limits of medical malpractice cases). More recently, a federal district court considered a similar case related to inadequate sanitizing procedures used for disinfecting endoscopes later used in medical procedures. *Taylor v. Ochsner Clinic Found.*, Civ. Nos. 11-1926, 11-2221, 2011 WL 6140885 (E.D. La. Dec. 9, 2011) (Vance, J). *Taylor* involved a consolidated putative class action in which the plaintiffs alleged that the defendants failed to disinfect endoscopes at the temperature recommended by the manufacturer, thus

7

exposing the plaintiffs to risks of infectious diseases. 2011 WL 6140885, at *1. Analyzing the *Coleman* factors, the federal court found that this failure to disinfect the medical equipment was treatment related, noting it involved the failure "to do an act (*i.e.*, properly sterilize endoscopes) for the patient during the patient's care, treatment, or confinement in the hospital." *Id.*, at *5. Like these courts before us, we find that, under the facts presented here, the Hospital's alleged failure to "properly maintain and service all equipment used in the sterilization process" is an extension of the general duty to render professional services related to medical treatment and is "treatment related." *See* La. R.S. 40:1231.1(A)(13) (definition of malpractice includes failure to render "professional services").

Of course, not every act that occurs in a Hospital is "treatment related" under the MMA. *See* Russ Herman, 1 La. Prac. Pers. Inj. § 4:289 (updated Aug. 2015) ("If the tortious acts alleged do not relate to medical care or treatment, then no recovery for medical malpractice may be had."). *Williamson* and *Blevins* are instructive to our analysis.[6] In *Williamson*, the issue was whether the failure of the health care provider to properly maintain a wheelchair, which lost a wheel causing injury to a patient after her discharge, was within the ambit of the MMA. We held that these acts were not "treatment related," because the acts at issue – "that the hospital negligently failed to repair the wheelchair and placed it back into service without verifying that it was properly repaired" – were not directly related to, nor

---

[6] The Hospital argued that the case is entirely distinct from others involving medical malpractice, because, in essence, the plaintiffs allege alternate theories of liability for one injury regarding the source of the infection. *See Richard v. La. Extended Care Centers, Inc.*, 02-0978, p.11 (La. 1/14/03), 835 So. 2d 460, 467-68 ("In general, any conduct by a hospital complained of by a patient is properly within the scope of the MMA if it can reasonably be said that it comes within the definitions of the Act, even though there are alternative theories of liability.") (internal brackets and quotation marks omitted). Specifically, the plaintiffs cannot pinpoint a cause of the infection, and alternatively allege that the infection could have resulted from failure to properly sterilize or clean surgical instruments, failure to properly maintain the sterilization equipment used to sterilize the instruments, or the use of Floseal in the surgical procedure. According to the Hospital, courts have held that, when there is a "dual characterization" of an action as medical malpractice or tort, all of the allegations should be considered under the MMA. *See Todd v. Angeloz*, 2002-1400 (La. App. 1 Cir. 3/28/03), 844 So. 2d 316, 320. *See also* Weimer, J., dissent in *Blevins*, 07-0217, p.1, 959 So. 2d at 449. Because we find that the allegations of paragraph 2A are within the parameters of the MMA, we do not reach this question here.

did they involve, actual "treatment" of a patient. 04-0451, pp.11-12, 888 So. 2d at 789-90. In other words, though the transportation of the patient may have been related to treatment (an issue the Court did not directly address), the failure to properly repair a wheelchair, thereby causing a wheel to fall off, was not treatment related. In contrast, in this case, Mr. Dupuy allegedly contracted the bacteria due to the Hospital's failure to maintain equipment used to sterilize surgical instruments used in the treatment for which he was admitted to the Hospital. Ensuring the proper maintenance of functioning of sterilization equipment is tied directly to the surgical treatment Mr. Dupuy received.

Likewise, in *Blevins*, the issue presented to the Court was whether the failure of a health care provider to properly maintain a hospital bed, which rolled while the patient was attempting to use the commode and resulted in a knee injury, fell within the MMA. *Blevins*, 07-0217, 959 So. 2d 440. The Court found that the acts alleged were not "treatment related," because the patient was hospitalized to treat an infection of the groin, but he fell and sustained an injury to his knee when he put pressure on the bed and the bed rolled. 07-0217, p.8, 959 So. 2d at 446. As the Court observed: "These two separate and distinct events occurred independently of each other with one being treatment-related as to his groin infection and the other being an injury sustained by a fall caused by a bed that improperly rolled." 07-0217, p.8, 959 So. 2d at 446. In this case, unlike in *Williamson* and *Blevins*, the wrongful conduct complained of is directly related to – and, in fact, the alleged infection occurred during – the treatment for which Mr. Dupuy was admitted to the Hospital. Because we find that proper sterilization of surgical instruments is at very core of the "treatment" of a patient, we find it is "treatment related."

We also find that that the allegations of paragraph 2A relate to a dereliction of professional skill. As we observed in *Coleman,* the significance of the term "malpractice" is that it differentiates professionals from nonprofessionals for

purposes of applying these statutory limitations on tort liability. 01-1517, p. 15; 813 So. 2d at 315. Unlike in *Williamson*, where we observed that no "professional skill" was exercised in repairing a wheelchair or determining whether to place it back in service, or in *Blevins*, where we held that the failure to lock a bed does not result from any "dereliction of professional skill," here, there is a clear utilization of professional medical skill in determining the sterilization requirements of equipment used to ensure the safety of surgical instrumentation. *Williamson*, 04-0451, pp.11-12, 88 So. 2d at 789-90; *Blevins*, 07-0217, p.9, 959 So. 2d at 446.

Plaintiffs make two separate arguments related to this factor of the *Coleman* analysis, neither of which we find persuasive. First, they argue that the injuries were not "treatment related," because the alleged failure to maintain and service the sterilization equipment occurred before Mr. Dupuy ever entered the Hospital. But there is no requirement that an action must be contemporaneous with a patient's treatment in order to fall under the MMA. Indeed, the MMA itself specifically states that failures in the "training and supervision" of healthcare providers is within the definition of malpractice, and such training and supervision necessarily occur before any treatment. La. R.S. 40:1231.1(A)(13). As noted by the federal court in *Taylor*, under the plaintiffs' interpretation, "any and all preliminary safeguards rendered before a discrete incident of medical treatment would fall outside the Act." Civ. Nos. 11-1926, 11-2221, 2011 WL 6140885, at *6. Likewise, courts have held that actions *after* treatment can be "treatment related." *See, e.g., Flood v. Pendleton Mem'l Methodist Hosp.*, 02-0440 (La. App. 4 Cir. 7/17/02), 823 So. 2d 1002, 1009 (misfiling bone scan results is "treatment related" because "the interpretation of the bone scan is a necessary step in [plaintiff's] cancer treatment program"), *writ denied*, 02-2206 (La. 11/8/02), 828 So. 2d 1121; *Andre v. Binder*, 1999-1952 (La. App. 1 Cir. 2/18/00), 753 So. 2d 397, 398 (failure to correct misdiagnosis of condition after receiving contrary

laboratory results arose out of patient care). We specifically reject the plaintiffs' argument that the injury at issue must be contemporaneous with the act or omission at issue to fall within the MMA.

Plaintiffs also argue that Mr. Dupuy's injury was not "treatment related," because deposition testimony indicated the maintenance and service of sterilization equipment at the Hospital may have been performed by plant operations rather than physicians.[7] Even if this is the case, which appears to be contested,[8] this argument does not convince us that this particular cause of action falls outside of the MMA. Nothing in the statute's plain language limits its application to direct treatment by a physician. Indeed, the statute includes under the ambit of the MMA injuries that are "based on health care or professional services rendered . . . by a health care provider, to a patient. . ." La. R.S. 40:1231.1(A)(13). The use of the broad term "health care provider," rather than simply "physician" or "medical doctor," necessarily includes actions which are treatment related and undertaken by the Hospital in its capacity as a health care provider – even if those actions are not performed directly by a medical professional.

*(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached.*

We find that the allegations in paragraph 2A will require expert medical evidence to determine whether the standard of care was breached. The plaintiffs

---

[7] Plaintiffs also assert that the Hospital's case must fail, because the Hospital failed to present any evidence at the trial on the exception. However, a failure to present evidence is not fatal to the Hospital's case. *See LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-0008 (La. 9/5/07), 966 So. 2d 519, 525 ("Where no evidence is presented at trial of a dilatory exception, like prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true.").

[8] The *amici curiae* in this matter argued in their brief supporting the Hospital that this explanation is incomplete, and that health care providers follow sterilization procedures that are "complex and ongoing." The information provided by *amici* is not in the record of the case and we therefore do not consider it here as part of our analysis of the *Coleman* factors. *See* La. C.C.P. art. 2164 ("The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."); *B.W.S., Jr. v. Livingston Parish Sch. Bd.*, 06-1981 (La.8/16/06), 936 So.2d 181, 182 ("It is well-settled that appellate courts are limited to the record developed in the trial court and are prohibited from receiving new evidence.").

allege that the Hospital was negligent for failing to maintain certain equipment required for proper sterilization of surgical equipment. We recognize that ordinary laypersons would be capable of concluding that surgical instruments **should** be properly sterilized before surgery. However, whether instruments were in fact properly sterilized is a question that requires medical expertise. Plaintiffs will be unable to prove their case without presenting medical experts to explain, for instance, what the protocol for such maintenance entails and the necessity of following that protocol to ensure proper sterilization. Likewise, a medical expert would be necessary in this case to define the standard of care based on medical guidelines; for instance, expert testimony could be required to set forth the level of microbial material, if any, which is appropriate for the sterilization equipment or to opine on when sterilization is compromised. Finally, a medical expert may be required to assist the trier of fact in determining whether improperly maintained sterilization equipment could even cause the transfer of *mycobacterium fortuitum* and the ensuing osteomyelitis.[9]

The facts presented here are distinct from those presented to us in *Williamson*, where we found that, while expert testimony could be necessary to establish the duty to maintain a wheelchair and a breach of that duty, expert *medical* testimony was not necessary. *Williamson,* 04-0451 at p.13, 888 So. 2d at 790. *See also Blevins*, 07-0217, p.9, 959 So. 2d at 446 (finding no medical expert will be needed to determine whether locking a hospital bed is negligent or to determine proper procedures for locking a hospital bed). Here, there is no doubt *medical* testimony would be required, and the plaintiffs would be unable to meet their burden of proof without such testimony.

---

[9] *See*, *e.g.*, *Stoughton v. Borgess Med. Ctr.*, No. 242781, 2003 WL 22800971 (Mich. App. 11/25/03) ("[T]he manner of sterilization and the determination of when sterilization is compromised, or sufficiently compromised to raise a medical concern, would be questions that someone other than a layperson would have to answer.").

**(4)** *Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform.*[10]

We find that the allegations at issue fall within the scope of activities the Hospital was licensed to perform – indeed, they are directly linked with the activities the Hospital is required to perform to retain its license to operate. In 1961, the Legislature created the Hospital Licensing Law, La. R.S. 41:2100, *et seq.*, the purpose of which was to "provide for the protection of the public health through the development, establishment, and enforcement of standards for the care of individuals in hospitals . . . which, in light of advancing knowledge, will promote safe and adequate treatment of such individuals in hospitals." La. R.S. 41:2101. As part of the law, the Legislature directed the Department of Health and Hospitals to adopt "rules, regulations, and minimum standards" that must be met by every licensed hospital, which shall have the effect of law. La. R.S. 40:2109. Importantly, among these standards are those relating to "[s]anitary conditions, practices and environment and sanitary and sterilization procedures and practices designed to avoid sources and transmission of infections. . . ." La. R.S. 40:2109(B)(2). As a result, the plaintiffs' allegations in paragraph 2A related to failure to sterilize or clean surgical instruments and failure to maintain the equipment used in the sterilization process are within the scope of activities a hospital is required to perform. Indeed, the cited statutes make clear that sterilization procedures designed to avoid sources and transmissions of infection are fact required by law for a Hospital to maintain its operating license.[11] *Cf.*

---

[10] The parties agree that factors three and six do not have relevance to this case. As a result, we do not address them herein.

[11] Though the parties focused on the second clause of this factor, we also find that the "incident occurred" in the context of a physician-patient relationship. As noted above, the plaintiffs are unable to determine the exact source of Mr. Dupuy's infection. But the "incident" that caused the infection – whatever the initial source of the *mycobacterium fortuitum* – was the spine surgery itself, which places it within the context of a physician-patient relationship.

13

*Williamson*, 04-0451 at p.14, 888 So. 2d at 791 (pointing out that "none of the standards set forth by the Louisiana Department of Health and Hospitals pertains specifically to the use of wheelchairs").

*(5) Whether the injury would have occurred if the patient had not sought treatment.*

It is evident to us that this factor favors the Hospital. Quite obviously, had Mr. Dupuy not sought treatment at the Hospital, he would not have contracted the post-operative infection. *Blevins* is instructive here. In that case, we found that, though the factor could have favored the defendant because the plaintiff was in the hospital when the injury occurred, it was "just as reasonable to say that any visitor to the hospital, even those not seeking treatment, who put pressure on this particular bed, could have suffered injury." *Blevins*, 07-0127, p.10, 959 So. 2d at 447. The contrary is true here. The nature of Mr. Dupuy's injury is such that a visitor to the Hospital could not have contracted osteomyelitis unless he or she underwent a surgical procedure involving the allegedly unsterilized equipment infected with *mycobacterium fortuitum*. Mr. Dupuy's injury occurred during the treatment that he purposefully entered the hospital to undergo.

Accordingly, pursuant to our analysis of this case using the factors set forth in *Coleman v. Deno*, the plaintiffs' allegations regarding failure to sterilize the equipment used to sanitize surgical instruments fall under the MMA.

### DECREE

For the reasons set forth above, we hold that the plaintiffs' claims that the Hospital failed to properly maintain and service equipment used in the sterilization of surgical instruments falls within the Louisiana Medical Malpractice Act. We therefore find that the district court erred in denying the Hospital's second exception of prematurity in part and find that the district court should have granted

14

the Hospital's second exception of prematurity in its entirety.  The ruling of the district court is reversed.

**REVERSED.**