MOORE, J.
The plaintiff, Mildred Louise Lyons, appeals from a summary judgment in favor of the defendant, Christus Health Central of Louisiana, that dismissed the Medical Review Panel proceeding instituted by the plaintiff against the defendant. For the following reasons, we render judgment granting the plaintiff's cross-motion for summary judgment and remand for further proceedings.
FACTS
On November 29, 2012, Mildred Louise Lyons, age 84, was a resident of the assisted living portion of Christus St. Joseph's Home, known as St. Joseph's Home Assisted Living Center. Christus St. Joseph's Home is owned by Christus Health Central of Louisiana. Ms. Lyons had lived in the facility since May 5, 2009. Her apartment was located on the third floor.
During the afternoon of that day, Ms. Lyons, who suffered from dementia, was found wandering in the parking lot of the facility looking for her car. She was redirected inside the facility and reportedly participated in activities later that afternoon.
Ms. Lyons was present in her room at the 9:00 p.m. bed check, but she was not there for the 11:00 p.m. bed check. She was subsequently discovered lying unconscious on the ground outside the building below an open third-story window. The investigating police officer, Detective J.C. Sturdivant, determined that she had fallen *256 21 feet from the open window. In his report he wrote:
The window was at the end of the hallway of the third floor, where Lyons resided. The window had been raised, and the screen had been pushed away. It appeared that Lyons exited the third floor window, for an unknown reason, and fell to the ground.
Ms. Lyons sustained serious injuries, including brain bleeding and multiple bone fractures to her legs, hip and ribs as well as other serious bodily injuries. However, she subsequently recovered and was later released from the hospital.
Ms. Lyons died 2½ years later on July 30, 2015. Theresa Henderson, her sister who initiated this action on her behalf, has been substituted as the plaintiff.
Ms. Lyons had a history of wandering. Detective Sturdivant also stated in his narrative that Michelle Musgrove, the director of the assisted living center, told him that it was common for Ms. Lyons to "get lost," exit the building looking for her vehicle which she does not own, and forget which apartment she lived in. She reported that Ms. Lyons' condition had worsened, and for that reason she was on a list to be checked on approximately every two hours.
Three weeks prior to this accident, on November 7, 2012, Ms. Lyons was taken to Woodlands Behavioral Center for psychiatric evaluation and medication adjustment with complaints of agitation, aggressive behavior and wandering. She was diagnosed with severe dementia (Alzheimer's type), impulse control disorder, hyperlipidemia and hypertension, labile mood, insomnia and vitamin deficiency. Her medications for these problems were adjusted, and upon discharge on November 22, 2012, her physical condition was described as poor. She was then sent directly to Winn Parish Medical Center hospital. She was returned back to Christus St. Joseph's on November 27, 2012.
Two days later, Ms. Musgrove called Theresa Henderson about transferring Ms. Lyons to a more appropriate facility given her condition, and contacted The Oaks facility about evaluating Ms. Lyons for admission to that facility. However, before any further action was taken, the accident occurred.
Ms. Henderson, filed a medical malpractice complaint against Christus St. Joseph's Home with the Louisiana Patient's Compensation Fund ("PCF") requesting a Medical Review Panel ("MRP") proceeding pursuant to the Louisiana Medical Malpractice Act ("MMA" or "Act.[1] ). The PCF sent plaintiff's attorney a letter stating that St. Joseph's Home is a self-insured provider "qualified for acts of medical malpractice under the provisions of La. R.S. 40:1299.41 et seq. for the claim." Christus Health Central sent plaintiff's counsel a letter stating that St. Joseph's Home is owned by Christus Health Central doing business as St. Joseph's Home. Before any further action was taken, the proceedings of the MRP were stayed because Christus Health Central filed a petition for declaratory judgment in district court. The petition asserted that this assisted living facility is not a "health care provider" as defined by the Act, does not provide "health care" as defined by the Act, and that the plaintiff's PCF claim is an ordinary negligence claim, not a medical *257 malpractice claim, and therefore outside the scope of the Act. It also argued in a supporting memorandum that the plaintiff's negligence claim has now prescribed, and therefore both the malpractice claim and tort claim should be dismissed with prejudice.
Subsequently, Christus Health Central moved for summary judgment on the question of whether Ms. Lyons' claim fell within the scope of the Act, as Christus St. Joseph's Home Assisted Living Center is not a "health care provider" as defined by the MMA, and does not provide "health care" to its residents. Defendant filed a cross-motion on the same issue.
Following a hearing, the district court granted Christus Health Central's motion, denied Ms. Lyons' cross-motion, and rendered summary judgment dismissing the MRP proceeding. This appeal followed.
APPLICABLE LAW
We review the grant of a motion for summary judgment de novo using the same criteria as the district court. Rodgers v. State Farm Mutual Auto. Ins. , 2015-0868 (La. 6/30/15), 168 So.3d 375.
The MMA was enacted by the Louisiana Legislature in response to a "perceived medical malpractice insurance 'crisis'." Dupuy v. NMC Oper. Co., L.L.C. , 2015-1754 (La. 3/15/16), 187 So.3d 436 ; Williamson v. Hospital Serv. Dist. No.1 of Jefferson, 04-0451, p.4 (La. 12/1/04), 888 So.2d 782, 785. The legislative intent was to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public. Id. Toward this end, "the MMA gives qualified health care providers two advantages in actions against them for malpractice, namely, a limit on the amount of damages and the requirement that the claim first be reviewed by a medical review panel before commencing suit in a court of law." Id. at 439.
In view of these advantages, we note the unusual position taken by the defendant notwithstanding certification by the PCF that it is a qualified health care provider ("QHCP"), by arguing that it is not a "health care provider" under the Act with regard to the St. Joseph's Home Assisted Living facility. Nor, it argues, did it provide "health care" to Ms. Lyons that resulted in her injuries. It maintains that the plaintiff must therefore bring her action in district court as an ordinary negligence claim subject to one-year liberative prescription; because that claim has now prescribed, it should be dismissed with prejudice.
The MMA and its limitations on tort liability for QHCPs apply strictly to claims "arising from medical malpractice," and all other tort liability on the part of the QHCP is governed by general tort law. Dupuy, supra. Because the limitation on liability the MMA gives to qualified health care providers is in derogation of the rights of tort victims, the Act is strictly construed. Id.
"Malpractice" is defined under the MMA in pertinent part as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider , to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient." La. R.S. 40:1231.1(A)(9) ; White v. Glen Retirement Sys. , 50,508 (La. App. 2 Cir. 4/27/16), 195 So.3d 485. (Emphasis supplied).
The first question raised by the definition of "malpractice" is the question of whether the defendant is a "health care provider." La. R.S. 40:1231.1(A)(10) ; Dupuy, supra at 440. The statute defines a "health care provider" as follows:
(10)
*258 "Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, nursing home, community blood center, tissue bank, dentist, a licensed dietician or licensed nutritionist employed by, referred by, or performing work under contract for, a health care provider or other person already covered by this Part, registered or licensed practical nurse or certified nurse assistant, offshore health service provider, ambulance service under circumstances in which the provisions of R.S. 40:1237.1 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, nurse practitioner, clinical nurse specialist, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, social worker, licensed professional counselor, licensed perfusionist, licensed respiratory therapist, licensed radiologic technologist, licensed clinical laboratory scientist, or any nonprofit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C. 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or any partnership, limited liability partnership, limited liability company, management company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.
The second prong of the analysis raised by the definition of malpractice is whether the act or omission involved health care. "Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components. La. R.S. 40:1231.1(A)(9) ; White, supra.
In addition, to qualify for the limitations of liability afforded by the MMA, a health care provider must become a QHCP by fulfilling the requirements of La. R.S. 40:1231.2(A), which provides:
A. To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1131.4.
(3) For self-insured health care providers, initial qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Initial qualification shall be effective for all other health care providers at the time the malpractice insurer accepts payment of the surcharge.
The Louisiana Administrative Code 37:III.501 governs the qualifications, conditions, and procedures required for PCF enrollment. The qualifications for enrollment are listed in LAC 37:III.503 :
A. To be eligible for enrollment with the fund, a person, professional corporation, professional partnership, or institution shall:
*259 1. be a health care provider, as defined by the Act or by these rules, who or which is engaged in the provision of health care services within the state of Louisiana, and which is not organized solely or primarily for the purpose of qualifying for enrollment with the fund;
2. demonstrate and maintain, to the satisfaction of and in the manner specified by the executive director and in accordance with the standards prescribed by §§ 503-511 hereof, or as otherwise provided by law, financial responsibility for, and with respect to, malpractice or professional liability claims asserted against the person or institution;
3. make application for enrollment upon forms prescribed and supplied by the executive director, pursuant to § 513 of these rules; and
4. pay the applicable surcharges to the fund.
Upon meeting these qualifications, the health care provider is issued a certificate of enrollment with the PCF (with emphasis supplied):
A. Upon receipt and approval of a completed application (including evidence of financial responsibility pursuant to § 505, § 507 or § 509) and payment of the applicable surcharge by or on behalf of the applicant health care provider, the executive director shall issue and deliver to the health care provider a certificate of enrollment with the fund, identifying the health care provider and specifying the effective date and term of such enrollment and the scope of the fund's coverage for that health care provider.
B. Duplicate or additional certificates of enrollment shall be available to and upon the request of an enrolled health care provider or his or its attorney, or professional liability insurance underwriter when such certification is required to evidence enrollment or qualification with the fund in connection with an actual or proposed malpractice claim against the health care provider.
Our jurisprudence holds that a certificate of enrollment submitted into evidence establishes a prima facie case for the applicability of the MMA regarding claims against the party identified on the certificate. La. R.S. 13:3711, 3712; Roark v. Liberty Healthcare Sys., LLC , 44,913 (La. App. 2 Cir. 12/9/09), 26 So.3d 968, writ denied , 2010-0390 (La. 4/23/10), 34 So.3d 265 ; Roberson v. Arcadia Healthcare Ctr., Inc. , 37,761 (La. App. 2 Cir. 7/9/03), 850 So.2d 1059 ; Hill v. Brentwood Hosp ., 480 So.2d 875 (La. App. 2 Cir. 1985) ; Goins v. Texas State Optical, Inc. , 463 So.2d 743 (La. App. 4 Cir. 1985). This presumption also applies to a letter from the PCF identifying a party as enrolled in the PCF. In Bickham v. Emergency Med. Consultants , 2010-0535 (La. App. 1 Cir. 11/1/10), 52 So.3d 162, the court stated that a letter from the PCF stating that Lifeline was enrolled with the PCF under the provisions of La. R.S. 40:1299.41, et seq. is considered prima facie proof that the provider is a QHCP under the Act, and that plaintiffs had offered no countervailing evidence as to Lifeline's qualification. See Hidalgo v. Wilson Certified Express, Inc. , 94-1322, p. 5 (La. App. 1 Cir. 5/14/96), 676 So.2d 114, 117 ; Roberson v. Arcadia Healthcare Ctr., Inc. , supra ; Remet v. Martin, 98-2751, pp. 6-9 (La. App. 4 Cir. 3/31/99), 737 So.2d 124; 128-129 ; Goins v. Texas State Optical, Inc. , supra.
The district court stated in its written reasons that it granted Christus Health Central's motion for summary judgment on grounds that its assisted living facility *260 is not a "health care provider" as contemplated by the MMA and, further, that "health care" as defined by the Act was not provided to Ms. Lyons in connection with her residence at the assisted living center. It reached these conclusions on finding that:
(1) Operation of an assisted living facility requires a different operating license issued by the state than the license to operate a nursing home. La. R.S. 40:2166.3 et seq.
(2) "Assisted Living" facilities are not included among the listed health care providers in the statutory definition of a "health care provider." La. R.S. 40:1231.1(A)(10).
(3)The contract between residents and St. Joseph's Home Assisted Living Center states that the facility does not render medical services to residents of the facility; any arrangement for medical care involves a separate agreement with Christus involving third-party providers.
The court noted that the Louisiana Legislature has had many opportunities to amend the statutory definition to include "assisted living" facilities in its list of health care providers, as it did "nursing homes," but it has not done so. It thus concluded that as a matter of policy, the Legislature has excluded assisted living centers from the class of health care providers covered by the MMA. Nursing homes, it said, are distinguished from assisted living facilities by the type of care they provide: " 'Assistance' is, in the Court's view, the proper term for the work or effort they put forth on behalf of their residents in helping each with their daily activities to a far more limited degree in light of the greater degree of self-sufficiency their residents possess."
The second prong of the court's analysis involved whether the defendant was providing "health care" services to the plaintiff that resulted in damages sustained that would trigger the MMA. The court concluded that under the contractual arrangements between the assisted living center and its residents, Christus Health Central did not provide "health care" services as contemplated by the MMA. Any health services it did provide, said the court, were obtained by entering a separate contract with a third party which was separate from the residential contract between the resident and assisted living facility.
As a result of these conclusions, the court rendered judgment granting the defendant's motion for summary judgment and dismissing the proceedings of the MRP.
ANALYSIS
Pursuant to La. C.C.P. art. 2164, "[t]he appellate court shall render any judgment which is just, legal and proper upon the record on appeal." Based upon our review of the record, and for the following reasons, we reverse the judgment of the district court granting the defendant's motion for summary judgment, and render judgment in favor of the plaintiff, granting her motion for summary judgment.
After initially naming the defendant as St. Joseph's Home, Ms. Lyons' counsel sent the PCF a letter informing them that Christus Health Central Louisiana was the defendant doing business as Christus St. Joseph's Home. The record shows that the PCF acknowledged by letter that St. Joseph's Home is a QHCP.[2] As noted above, *261 our jurisprudence holds that such a letter establishes a prima facie case that the defendant has met the qualifications of the Act and Administrative Code as a health care provider qualified for the protections afforded by the MMA. La. R.S. 13:3711, 3712; Roark v. Liberty Healthcare Sys., LLC , supra ; Roberson v. Arcadia Healthcare Ctr., Inc. , supra ; Bickham v. Emergency Med. Consultants , supra ; Hill v. Brentwood Hosp. , supra ; Goins v. Texas State Optical, Inc. , supra .
As a result, to prevail in its motion for summary judgment declaring that it is not a "health care provider" with respect to its assisted living facility, the defendant had the burden of showing that its assisted living facility is not covered by its certification as a QHCP.
The best evidence of this would have been a Certificate of Enrollment from the PCF that indicated the assisted living part of its facility was not included in the certification. No such document was ever produced. Also absent was any documentary evidence that the assisted living facility is a separate legal entity from Christus Health Central d/b/a St. Joseph's Home, or that it requested the PCF to exclude the assisted living portion of the facility because it did not meet the definition of a health care provider. In fact, it alleges in its petition for declaratory judgment that the assisted living facility is part of and operated by St. Joseph's Home, albeit with a different address in an adjacent building nearby connected by a breezeway to the nursing home.
Christus Health Central's main argument is that the assisted living facility operated under a different license than the nursing home facility known as St. Joseph's Home. It did not produce the license, however. We are not persuaded by this argument. Most health care providers operate under distinct license requirements unique to their particular profession or enterprise. The defendant has not shown that the distinct license to operate an assisted living facility as opposed to the license to operate the nursing home part of the facility makes that facility a legally distinct entity from Christus St. Joseph's Home or excludes it from being a health care provider.
We are also not persuaded by the legal conclusion attested to in Ms. Musgrove's affidavit that, based on her familiarity with nursing homes and assisted living centers, St. Joseph's Assisted Living Center is not a health care provider.
In short, the defendant, Christus Health Central Louisiana d/b/a Christus St. Joseph's Home, has presented little more than argument, where proof by documentation is needed, that its assisted living facility is not a health care provider qualified by the PCF.[3] Accordingly, we conclude that the defendant in this PCF complaint, Christus Health Central Louisiana d/b/a St. Joseph's Home is a health care provider qualified under the Act.
We turn now to the more difficult and pivotal question, in our view, of whether the Christus Health Central provided health care services to Ms. Lyons and thus the alleged negligence is malpractice as defined by the MMA. Health care is defined, in pertinent part, by the Act as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the *262 patient's medical care, treatment, or confinement." La. R.S. 40:1231.1(A)(9).
The contract between Christus St. Joseph's Assisted Living Center and its residents stipulates that it will provide basic services including living accommodations, housekeeping services, meals, planned activities and so on. As noted by both parties, the facility agreed to "regularly observe residents' health condition ... and needs for special services" and "will make personal assistance and care available to resident, according to his or her needs, as determined by Christus St. Joseph Assisted Living Center's staff, and utilizing its routine levels of staffing and equipment." A provision in the contract excludes health-related services, such as "furnishing or paying for healthcare items or services not expressly included in the Agreement, including, but not limited to physician's services, nursing services, surgery, hospital care, private duty care ... care for behavioral problems, including behaviors associated with advanced Alzheimer's disease or other dementia."
Accordingly, we agree with the trial court that St. Joseph's Home Assisted Living Facility's contract did not provide healthcare services, including such services for "behaviors associated with advanced Alzheimer's disease or other dementia."
On the other hand, it is clear from this record that the facility routinely accepted residents with dementia or Alzheimer's disease, and, according to Ms. Musgrove in her deposition testimony, when the dementia of a resident became too severe, the resident was transferred to another facility. Based on this comment, we suspect that a resident's transition from mild or moderate dementia, which was easily handled with routine custodial checks by the staffing at the facility, to severe dementia, occurs over time, as was apparently the case with Ms. Lyons.
The record further indicates that Ms. Lyons must have reached such a condition of severe dementia when she was sent to Woodlands Behavior Center for reevaluation with complaints of agitation, aggressiveness and wandering; she spent two weeks there. The medical notes indicate severe dementia such that communication was almost meaningless. Her health was recorded as poor and she was sent to Winn Parish Medical Center for treatment of her poor physical state. She then returned to Christus St. Joseph's Home Assisted Living Center, and the director immediately began the process of transferring her out of the facility. We note that contract between the facility and resident allows the facility, after consultation with the resident's physician and family, to make such a transfer.
In our view, when the director determined that the assisted living facility could no longer provide the care Ms. Lyons required, as was obvious from her behavior and recent medical assessment, it was incumbent upon the director to report this fact to the administrator of the nursing home who, in fact, was ultimately responsible for the facility as the administrator of St. Joseph's Home. At this point, a proper assessment could have been to determine what immediate actions were required to ensure that Ms. Lyons was not a threat to herself or others, even if it required around-the-clock custodial care or additional staffing in the facility pending her transfer.
It is indisputable that Alzheimer's disease and the associated dementia that Ms. Lyons suffered from was a medical condition that required health care treatment. In our view, by virtue of its agreement to monitor her health and needs for special services and to take the appropriate measures to provide such care, its failure to secure the safety of Ms. Lyons was an *263 omission constituting health care as defined by the Act as it was "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement" La. R.S. 40:1231.1(A)(9) ; White, supra.
Christus Health Central has also argued that Ms. Lyons was not a "patient" as defined by the Act. In our view, when her dementia had reached the degree of severity that it had on November 29, 2012, and it became incumbent upon St. Joseph's Home to exercise the greater degree of care to ensure her safety, she became a "patient" irrespective of whether she was officially enrolled in the nursing home.
Our opinion is bolstered by the decision of this court in White v. Glen Retirement Sys., supra , a case analogous to the instant case in many respects. The plaintiff suffered from severe dementia and was prone to falling. She was injured when she fell out of her bed which had been placed by a staff nurse in the highest possible position. When she was discovered on the floor, a nurse simply put her back in the bed without noticing femoral fractures, which were later discovered when the plaintiff exhibited excruciating pain. The plaintiff sued the Glen in district court and made a request for an MRP alleging claims of negligence and malpractice. The PCF sent a letter confirming that the Glen was qualified for acts of malpractice under the MMA. The facts indicated that the nursing staff was aware of the plaintiff's potential for injury, her high risk of falling, her inability to have safety awareness due to her disease processes, her dementia and inability to control her impulsive behavior associated with her disease and illness, yet they took no precautionary measures to prevent her from falling out of the bed. Further, it was clear that the nursing staff was supposed to closely supervise, monitor and check on her due to her high risk of falling, and was supposed to place her in a low bed with mats, utilize a bed alarm and implement other interventions to prevent falls and injuries.
The Glen filed an exception of prematurity regarding the tort claim filed in district court, alleging that the claims fell under the MMA. The plaintiff argued that some of its claims fell outside the MMA, particularly that the action of the nursing staff in raising the bed was intentional and custodial, and therefore fell outside the MMA.
This court considered the factors set forth in Coleman v. Deno , 01-1517 (La. 1/25/02), 813 So.2d 303, for determining whether a negligent act by a qualified health care provider is covered by the MMA:
1) whether the particular wrong is treatment related or caused by a dereliction of professional skill;
2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
3) whether the pertinent act or omission involved assessment of the patient's condition;
4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
5) whether the injury would have occurred if the patient had not sought treatment; and
6) whether the tort alleged was intentional.
We also reviewed several cases involving falls from beds and wheelchairs and concluded that such cases require close attention to whether the patient's condition simply *264 required routine custodial care or total round-the-clock care. See e.g., Hamilton v. Baton Rouge Health Care , 09-0849 (La. App. 1 Cir. 12/8/10), 52 So.3d 330. We concluded that the claim regarding the failure to position the bed (so that the plaintiff could not injure herself) constituted a negligent rendering of care as well as a failure to assess the plaintiff's condition, and this was not merely a custodial act claim.
Similarly, in this instance, Ms. Lyons' allegations of the defendant's negligence involved more than simple negligence in performing a routine custodial act. Similar to the plaintiff's propensity to fall in White, supra , the director and staff were well aware that Ms. Lyons had a propensity to wander, get lost and forget where she lived. They also knew that on the day of the accident she was fixated on finding her car that she did not own. Despite knowing these facts, and being aware that Ms. Lyons suffered from severe dementia, (and had already been found that day walking in the parking lot of the facility searching for her car), the defendant failed to assess what was required to secure her safety given her medical condition, and it merely put her on routine custodial bed checks.
We therefore conclude that the alleged negligence of Christus Health Central in this case involves "an act or treatment that should have been performed or furnished, or which should have been performed or furnished," by the defendant for, to or on behalf of Ms. Lyons.
CONCLUSION
Accordingly, for the reasons set forth herein, the judgment of the district court granting Christus Health Central Louisiana's summary judgment is reversed. We render judgment granting the cross-motion for summary judgment. We remand the case to district court for further proceedings in accordance with this judgment. Costs are to be paid by Christus Health Central.
REVERSED AND RENDERED; REMANDED.

La. R.S. 40:1299.41, redesignated as La. R.S. 40:1231.1 to 40:1231.10. At the time of the alleged malpractice, the medical malpractice statutes were designated as La. R.S. 40:1299.41 to 40:1299.49. By H.C.R. No. 84 of the 2015 Regular Session, the provisions were redesignated as La. R.S. 40:1231.1 to 40:1231.10. The parties have, for the most part, elected to use the new numerical designations in their more recent arguments.

Plaintiff's counsel states that he also received a letter from the PCF stating that Christus Health Central Louisiana is a QHCP.

At times it was argued that the plaintiff sued the wrong defendant, and then argued that Christus Health Central Louisiana d/b/a Christus St. Joseph's Home is, in fact, the proper defendant.