BARBARA CAMPBELL

VERSUS

SEASIDE BEHAVIORAL HEALTHCARE, LLC,
SEASIDE HEALTHCARE, LLC, SEASIDE
HEALTH SYSTEM, LLC, JANE DOE, AND
MARKEL INSURANCE COMPANY

NO. 21-CA-29
C/W
20-C-341

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 799-110, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING


June 09, 2021


**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and John J. Molaison, Jr.


**<u>AFFIRMED</u>**

 **RAC**
 **FHW**
 **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
BARBARA CAMPBELL
> Roderick Alvendia
> John B. Kelly, III
> Jeanne K. Demarest
> Kurt A. Offner

COUNSEL FOR DEFENDANT/APPELLANT,
SEASIDE BEHAVIORAL HEALTHCARE, LLC, SEASIDE HEALTHCARE,
LLC, SEASIDE HEALTH SYSTEM, LLC AND MARKEL INSURANCE
COMPANY
> Lisa A. McLachlan

**CHAISSON, J.**

In this personal injury case arising from Barbara Campbell's purported fall and subsequent injuries while boarding a van to be transported from her home to the Seaside Behavioral Healthcare facility, defendants appeal the trial court's September 2, 2020 judgment denying their exception of prematurity.[1] For the following reasons, we find that Ms. Campbell's claims, as alleged in her petition, do not sound in medical malpractice as defined in the Louisiana Medical Malpractice Act, and therefore affirm the judgment of the trial court denying the exception of prematurity.

**FACTS AND PROCEDURAL HISTORY**

According to her Petition for Damages, on or about September 5, 2018, Ms. Campbell entered a transportation van owned by Seaside Behavioral Healthcare, LLC, Seaside Healthcare, LLC, and Seaside Health System, LLC (collectively "Seaside"), and operated by one of their employees. Her petition alleges that "suddenly and without warning due to the negligence of [defendants' employee], [Ms. Campbell] was severely injured to include a fracture of her right leg." Her petition also alleges that the employee failed to use due diligence by not assisting Ms. Campbell to safely enter onto the transportation van. Ms. Campbell makes additional allegations against Seaside for negligent hiring and supervision of, and negligent entrustment of the van to, their driver. She alleges no other facts in the petition detailing the location or circumstances of the incident.

In response to the petition, defendants filed a dilatory exception of prematurity wherein they argue that, as qualified healthcare providers, they are entitled to the protections of the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1231.1, *et seq.*, including review of Ms. Campbell's claim by a medical

---

[1] Defendants also sought supervisory review of this same judgment in a writ application filed with this Court. Upon motion of defendants, Writ Application No. 21-C-341 has been consolidated with this appeal for resolution.

review panel. In support of their exception of prematurity, defendants attached to their memoranda exhibits which included: certified copies of Certificates of Enrollment of defendants with the Louisiana Patient Compensation Fund, an affidavit of Crystal Foley, the Seaside employee assisting Ms. Campbell, and a contemporaneous Incident Report Log prepared by Ms. Foley on the date of the incident. Following a hearing on defendants' exception of prematurity, the trial court rendered judgment denying the exception.

On appeal, defendants argue that the trial court erred in denying the exception of prematurity because Ms. Campbell "was a mental health care patient of Seaside Behavioral Health/Psychiatric facility on the date of the incident … which incident occurred while [Ms. Campbell] was assisted by a Mental Health Tech to transfer from her home health caregiving agency at her apartment to Seaside, when Ms. Campbell engaged with an imaginary friend Ernie as Ms. Foley was assisting [Ms. Campbell] into a facility van."

**DISCUSSION**

The burden of proving prematurity is on the exceptors to show that they are entitled to a medical review panel. *Bonilla v. Jefferson Par. Hosp. Serv. Dist. #2*, 16-0234 (La. App. 5 Cir. 12/28/16), 210 So.3d 540, 545, *writ denied*, 17-0187 (La. 4/7/17), 215 So.3d 235; *Perry v. State Farm Mut. Auto. Ins. Co.*, 16-418 (La. App. 5 Cir. 12/14/16), 209 So.3d 308, 311. The LMMA and its limitations on tort liability for a qualified health care provider apply strictly to claims arising from medical malpractice, and all other tort liability on the part of the qualified health care provider is governed by general tort law. *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-0451 (La. 12/1/04), 888 So.2d 782, 786. Coverage under the LMMA must be strictly construed because the limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. *Id.* (citing *Sewell v. Doctors Hosp.*, 600 So.2d 577, 578 (La. 1992)). The

issue of whether a claim sounds in medical malpractice is a question of law conducted under a *de novo* standard of review. *Bonilla*, *supra*.

In *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303, 315-316, the Louisiana Supreme Court identified the following factors to be considered when determining whether the conduct of a qualified health care provider constitutes "malpractice" as defined under the LMMA:

> [1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
>
> [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
>
> [3] whether the pertinent act or omission involved assessment of the patient's condition.
>
> [4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
>
> [5] whether the injury would have occurred if the patient had not sought treatment, and
>
> [6] whether the tort alleged was intentional.

Before applying the *Coleman* factors to the pleadings and evidence contained in the record, we first note the challenge of doing so in this particular case based upon the extremely limited and vague allegations made in Ms. Campbell's petition, as well as the scant evidence supplied in Ms. Foley's affidavit and incident report in support of defendants' exception of prematurity.[2] Ms. Campbell's petition makes no allegations regarding her medical status, her relationship or connection to the defendant entities, or the reason that she was being transported by defendants to their facility or the location from which she was being transported. Regarding Ms. Foley's conduct, the petition only alleges that

---

[2] Although counsel for both Ms. Campbell and for defendants take great liberties in elaborating upon the circumstances under which, and the reason why, Ms. Campbell was being provided transportation to defendants' facility, and the conduct of both Ms. Campbell and Ms. Foley at the time of the incident, this Court is constrained to review only the allegations of Ms. Campbell's petition and the evidence introduced on the exception of prematurity, not allegations made by counsel in their briefs and argument to the trial court not supported by the record.

Ms. Foley failed to assist Ms. Campbell with entering the van, which caused Ms. Campbell to fall.

On the other hand, although Ms. Foley's affidavit maintains that Ms. Campbell was Seaside's "patient," it provides no additional information regarding the nature of Ms. Campbell's condition or the reason that she was being transported from the "patient's [Ms. Campbell's] home" to Seaside's facility. Additionally, Ms. Foley's affidavit and report alleges that Ms. Campbell was "engaged with her imaginary friend Ernie" when Ms. Campbell "jumped backwards from the bottom step of the van," claiming that Ernie "pushed her down." However, as to her own conduct, Ms. Foley merely alleges that she was generally assisting Ms. Campbell with a footstool to get on the van.[3]

Consequently, it is these vague allegations and limited evidence to which we now apply the *Coleman* factors. Defendants argue under the first *Coleman* factor that the alleged negligence of Ms. Foley, a certified mental health technician, is treatment related. The defendants assert, correctly, that nothing in the plain language of the LMMA limits its application to direct treatment by a physician. *Dupuy v. NMC Operating Co.*, 15-1754 (La. 3/15/16), 187 So.3d 436, 443. The LMMA provides the following definition of malpractice:

> "Malpractice" means any unintentional tort … based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions … in the training or supervision of healthcare providers…

La. R.S. § 40:1231.1(A)(13)

The use of the term "health care provider" rather than simply "physician" or "medical doctor" necessarily includes actions which are treatment related and

---

[3] Her only other allegations regarding her own conduct involve helping Ms. Campbell get up after she had already fallen.

undertaken by a hospital in its capacity as a health care provider - even if those actions are not performed directly by a medical professional. *Dupuy*, 187 So.3d at 443.

However, the Supreme Court has also instructed that an allegation may involve "handling of a patient" and still not constitute malpractice if the alleged act or omission does not occur during the patient's medical care, treatment or confinement. *Richard v. Louisiana Extended Care Centers, Inc.*, 02-0978 (La. 1/14/03), 835 So.2d 460, 468; *Porter v. S. Oaks Nursing & Rehab. Ctr., LLC*, 49,807 (La. App. 2 Cir. 5/20/15), 165 So.3d 1197, 1202, *writ denied*, 15-1228 (La. 9/25/15), 182 So.3d 935. The parties do not dispute that Ms. Campbell was not receiving medical treatment at the time of the incident. The transportation service provided by Seaside is not an ambulance service as that term is defined in La. R.S. 40:1231.1 or La. R.S. 40:1237.1, staffed with a paramedic or registered nurse.

Additionally, while defendants characterize Ms. Foley as a trained "mental health technician" and introduced evidence of her training in crisis prevention,[4] there is no dispute that Ms. Foley is not licensed to practice medicine or provide medical treatment in the State of Louisiana. "Mental health technician" is not one of the medical professions recognized under La. R.S. 40:1231.1, and as such her actions or omissions could not be characterized as a dereliction of professional medical skill. Furthermore, defendants make no allegation, and provide no evidence, that Ms. Foley made any type of medical assessment of Ms. Campbell or that she was providing any type of medical treatment to Ms. Campbell at the time of the incident. Nor do defendants provide any evidence as to the reason that Ms. Campbell was being transported to their facility. Consequently, we find that this factor weighs against a finding that Ms. Campbell's claims sound in malpractice.

---

[4] It's unclear from the record whether Ms. Foley's training in crisis prevention included any instruction on proper procedures for assisting someone into a van or preventing falls.

21-CA-29                                                    5

Defendants' arguments concerning the second and third *Coleman* factors are unsupported and conclusory. Ms. Campbell alleges in her petition that she fell while boarding the van.[5] Boarding a van is not an act that usually requires a medical assessment. In contending that Ms. Campbell's claim sounds in medical malpractice, defendants do not explain how the act of boarding a van required an assessment of Ms. Campbell's medical condition, or exactly what expert medical evidence will be required to establish the appropriate standard of care. Defendants also disregard a long history of general negligence cases involving passengers falling while entering vehicles. *See Willis v. Reg'l Transit Auth.*, 95-2350 (La. App. 4 Cir. 3/27/96), 672 So.2d 1013, 1015; *Robin v. New Orleans Pub. Serv., Inc.*, 292 So.2d 926, 927 (La. App. 4 Cir. 1974); *Searcy v. Interurban Transp. Co.*, 189 La. 183, 191, 179 So. 75 (1938). We find that these factors weigh against finding that Ms. Campbell's claims sound in malpractice.

Regarding the fourth *Coleman* factor, defendants repeatedly reiterate Ms. Campbell's status as a "patient" of Seaside, but fail to discuss or provide evidence of the other half of that relationship, the physician, or whether the actions being performed were within the scope of Seaside's license. *See Rivera v. Bolden's Transp. Serv., Inc.*, 11-1669 (La. App. 1 Cir. 6/28/12), 97 So.3d 1096, 1102. This Court cannot assume that merely because the plaintiff is a "patient" that *all* of the services rendered by Seaside and its employees are medical services covered by the LMMA. *See Richard*, *supra*.

---

[5] *Cf.*, *Encalade v. W. Jefferson Med. Ctr. Ambulance Serv.*, 09-355 (La. App. 5 Cir. 11/24/09), 28 So.3d 1116, 1119, in which case the plaintiffs specifically alleged in their petitions that "the failure of the emergency medical technicians to hurriedly get to Mr. Encalade, promptly stabilize Mr. Encalade for transport, and quickly return Mr. Encalade to WJMC contributed to the rapidity of his death." This Court found no error in the trial court's reasoning that "plaintiffs' allegations fall within the scope of the Louisiana Medical Malpractice Act because it places squarely at issue the emergency medical technicians' assessment of the patient's medical condition and the nature of the response (flashing lights and the speed of emergency transport) required by the applicable standard of care."

Defendants further argue that Ms. Campbell suffered a mental health incident while entering the van which was the cause of her fall. While this allegation is relevant to the question of causation, and ultimately who, if anyone, may be at fault for Ms. Campbell's injuries, it is not determinative of the question of whether Seaside or its employees were providing healthcare or rendering professional medical services at the time of the injury. People trip and fall for many causes unrelated to the provision of healthcare. We find that this factor weighs against finding that Ms. Campbell's claims sound in malpractice.

For the fifth *Coleman* factor, defendants argue that the incident would not have occurred absent the necessary transfer from Ms. Campbell's home care to the Seaside facility for treatment. As this Court has noted previously, this factor is not a simple "but for" test, but must be construed in relation to the other *Coleman* factors. *Bonilla*, 210 So.3d at 553. As mentioned above, no evidence has been introduced to show that professional medical services or treatment were being rendered to Ms. Campbell at the time of the van incident. Defendants argue that Ms. Campbell was on her way to the Seaside facility for medical treatment, but have offered no evidence of this or any other evidence specifying the nature of the medical services or treatment Seaside provided Ms. Campbell. Furthermore, there is no evidence that transportation to Seaside via van service was medically necessary, rather than an amenity or convenience to facilitate provision of medical services or treatment at the Seaside facility. We find that this factor weighs against finding that Ms. Campbell's claims sound in malpractice.

Defendant's correctly point out that Ms. Campbell has not alleged any intentionality on the part of the defendants. As this Court has previously stated, this factor is never irrelevant because intentional torts are clearly outside the scope of the LMMA. *Bonilla*, 210 So.3d at 554. We find that this factor weighs in defendants' favor.

**CONCLUSION**

Upon our *de novo* review of the limited and vague allegations contained in Ms. Campbell's petition, and the scant evidence contained in Ms. Foley's affidavit and incident report, in light of the *Coleman* factors, we are unable to conclude that defendants have carried their burden of proof on their exception of prematurity to show that Ms. Campbell's allegations of negligence against Seaside and its employee sound in medical malpractice as defined in the LMMA. To the contrary, applying the *Coleman* factors to these vague allegations and limited evidence as contained in the record at this time, compels us to conclude that Ms. Campbell's allegations of negligence do not sound in medical malpractice as defined in the LMMA. Accordingly, on the record before us, we affirm the ruling of the trial court denying defendants' exception of prematurity.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JUNE 9, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

# 21-CA-29
### C/W 20-C-341

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
JEANNE K. DEMAREST (APPELLEE)     JOHN B. KELLY, III (APPELLEE)          KURT A. OFFNER (APPELLEE)
LISA A. MCLACHLAN (APPELLANT)

**MAILED**
RODERICK ALVENDIA (APPELLEE)
ATTORNEY AT LAW
909 POYDRAS STREET
SUITE 1625
NEW ORLEANS, LA 70112