MELISSA ARMAND, ET AL.

VERSUS

WEST JEFFERSON HOLDINGS, LLC D/B/A
WEST JEFFERSON MEDICAL CENTER

NO. 24-C-410

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 854-031, DIVISION "H"
HONORABLE DONALD L. FORET, JUDGE PRESIDING

August 28, 2025

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and John J. Molaison, Jr.

**WRIT GRANTED; JUDGMENT REVERSED; CASE DISMISSED**
**WITHOUT PREJUCIT**
   **SJW**
   **JGG**
   **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/RELATOR,
WEST JEFFERSON HOLDINGS LLC D/B/A WEST JEFFERSON MEDICAL
CENTER (WJMC)

 Michael F. Nolan, Jr.
 Sarah L. Johnson

COUNSEL FOR PLAINTIFF/RESPONDENT,
MELISSA ARMAND, AND JAMES TROY ARMAND, ON BEHALF OF THE
MINOR CHILD ADDISON MARIE ARMAND

 Michael S. Sepcich
 Thomas C. Wicker, IV
 T. Carey Wicker, III
 Vincent E. Odom
 Davida F. Packer

**WINDHORST, J.**

Relator/defendant, West Jefferson Holdings, LLC, d/b/a West Jefferson Medical Center (hereafter "WJMC"), seeks review of the trial court's July 26, 2024 judgment overruling its exception of prematurity. In its exception, WJMC contended that the petition for damages filed by plaintiffs, Melissa Armand and James Troy Armand, individually and on behalf of the decedent's minor child, was premature because plaintiffs did not submit the claim to a medical review panel before filing their petition, as required by the Louisiana Medical Malpractice Act ("LMMA").

**BACKGROUND**

In their petition, plaintiffs asserted a general tort claim against WJMC, alleging WJMC's negligent maintenance of a Computed Tomography Angiography scanner ("CTA") caused the death of Troy James Armand, who was Melissa Armand's husband and James Armand's son. The petition indicates that on January 8, 2024, Troy Armand presented at WJMC emergency room with chest pain, radiating neck and jaw pain, and shortness of breath. WJMC medical staff took Mr. Armand's cardiac enzymes and performed a full evaluation. The cardiologist recommended a CTA scan; however, due to "some mechanical issues with the scanner," WJMC did not conduct a CTA scan. Instead, WJMC hospital staff took a repeat electrocardiogram and a nuclear stress test, which showed Mr. Armand had a low risk of cardiac events. WJMC discharged Mr. Armand. Four days later, Mr. Armand suffered an aortic dissection with cardiac tamponade and died.

In its exception of prematurity, WJMC argued the LMMA governs plaintiffs' claim because WJMC is a qualified medical provider and the claim is related to Mr. Armand's medical treatment. In opposition, plaintiffs argued that their claim did not fall within the LMMA because it involves administrative negligence, specifically, WJMC's failure to properly maintain its equipment, ~~namely it's~~ the CTA machine. Plaintiffs therefore asserted that general tort law applies to their claim.

After hearing argument from counsel, without introduction of evidence, the trial court denied WJMC's exception of prematurity, concluding plaintiffs' claim sounded in general negligence and not in medical malpractice.[1] The trial judge did not state reasons, but stated that his decision was based on <u>Coleman v. Deno</u>, 01-1517 (La. 1/25/02), 813 So.2d 303; <u>Billeaudeau v. Opelousas Gen. Hosp. Auth.</u>, 16-846 (La. 10/19/16), 218 So.3d 513; <u>Tucker v. Seaside Behavioral Ctr., LLC</u>, 23-132 (La. App. 5 Cir. 12/27/23), 378 So.3d 879; and <u>LaCoste v. Pendleton Methodist Hosp., L.L.C.</u>, 07-8 (La. 9/5/07), 966 So.2d 519.

**STANDARD of REVIEW**

Neither the writ application nor the opposition included the minute entry, but the transcript shows that no documents or testimony were admitted into evidence during the hearing on relator's exception of prematurity. The trial judge made no findings of fact, and stated in his ruling that his decision was based on <u>Coleman</u>, <u>Billeaudeau</u>, <u>LaCoste</u>, and <u>Tucker</u>, *supra*. In the absence of findings of fact by the trial court, appellate courts considering the exception of prematurity generally take the allegations of the petition as true, and the ruling on the exception becomes a question of law. We conclude that the issue before us is primarily one of law, and that the standard of review is *de novo*.

**LAW and ANALYSIS**

Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on a timely-filed exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La. R.S. 40:1231.8 A; <u>Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson</u>, 04-0451 (La. 12/1/04), 888 So.2d 782, 785. The exceptor bears the burden of proving prematurity and that it is entitled to a medical review panel. <u>Id.</u> Any ambiguities in the LMMA

---

[1] At the hearing, the trial court inquired as to the length of time the CTA testing equipment had been broken, and was informed that WJMC had not responded to discovery regarding this factual inquiry.

should be strictly construed against coverage because the Act is in derogation of the rights of tort victims. Id. at 787.

Louisiana courts have consistently held the LMMA and its limitations on tort liability for a qualified health care provider apply *only* to claims "arising from medical malpractice," and that all other tort liability on the part of the qualified health care provider is governed by general tort law. Coleman v. Deno, 01-1517 (La. 1/25/02), 813 So.2d 303, 315; LaCoste, 966 So.2d at 524.

The LMMA definitional subsection, La. R.S. 40:1231.1 A (9) & (13), provide:

> (9) **"Health care" means** any act or treatment performed or furnished, or *which should have been performed* or furnished, by any health care provider for, to, or *on behalf of a patient during the patient's medical care, treatment*, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
>
>         \*      \*      \*
>
> (13) **"Malpractice" means** any *unintentional* tort or any breach of contract based on health care or professional services rendered, or *which should have been rendered, by a health care provider, to a patient, including failure to render services timely* and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient. [Emphasis added.]

Thus, the LMMA provides that "**health care**" includes any act or treatment performed, or which *should* have been performed. "**Malpractice**" includes any unintentional tort or any breach of contract based on health care or professional services which should have been rendered, by a health care provider, to a patient, including failure to render services timely. Plaintiffs contend that the CTA scan should have been rendered on behalf of the patient, Troy Armand, during his medical care and treatment by his health care provider, WJMC, and that WJMC failed to render that service because the CTA machine wasn't working. Plaintiffs persuasively

argue that this was a general tort matter, but based on our repeated analyses of the applicable subsections of the LMMA and pertinent jurisprudence, we conclude that the allegations of this case "sound in medical malpractice" more than in tort.

In determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA, or general tort law, the Louisiana Supreme Court in Coleman, *supra*, and in successive cases, has consistently utilized the following factors:

(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;

(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

(3) whether the pertinent act or omission involved assessment of the patient's condition;

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

(5) whether the injury would have occurred if the patient had not sought treatment; and

(6) whether the tort alleged was intentional.

Coleman, 813 So.2d at 315.

In Coleman, the Louisiana Supreme Court found that a claim for alleged wrongful transfer from one emergency room to another of a patient whose left arm was later amputated sounded in medical malpractice. 813 So.2d at 318.

In contrast, in LaCoste, the Louisiana Supreme Court held that a hospital's negligent failure to design, construct, and/or maintain its facility to provide emergency power to sustain life support systems during and in the aftermath of Hurricane Katrina, and the failure to implement adequate evacuation plans or have facilities available to transfer patients to in emergency or mandatory evacuations, did not directly relate to medical treatment or a dereliction of professional skill within the meaning of the first Coleman factor.  966 So.2d 519, 525-26.  The court

reasoned that these allegations related to the deficient design of the hospital and not medical treatment or the dereliction of a professional medical skill. Id.

In Billeaudeau, the Louisiana Supreme Court found that a negligent credentialing claim against a hospital sounded in general negligence and fell outside the purview of the LMMA. 218 So.3d at 527. Plaintiffs alleged the hospital was negligent in credentialing a doctor who lacked the experience and training required by the hospital's own by-laws. The court, applying the Coleman factors, found the alleged negligent credentialing was *administrative*, not medical, in nature. Id. Consequently, the tortious conduct alleged, *i.e.*, the negligent administrative decision making, was separate and distinct from the health care providers' medical decisions and conduct directly related and integral to the rendering of medical care and treatment to the patient. Id.

In Williamson, the Supreme Court found the alleged negligence of the hospital in failing to repair a wheelchair and in failing to make sure that the wheelchair was in proper working condition did not arise from medical malpractice within meaning of LMMA. 888 So.2d at 790-791.

In Tucker, a mentally ill patient jumped out of a third-floor window. This court found general tort law applied because the negligence alleged related to inadequate window locks and staffing, and not to medical malpractice. 378 So.3d at 890.

Likewise, we apply the Coleman factors to the allegations asserted in the petition, which we accept as true for the purpose of resolving this dispute. Upon doing so, we find the foregoing cases, upon which plaintiffs and the trial court relied, to be factually distinct from the one before us, such that application of the Coleman factors to the petition's allegations herein leads us to a different conclusion. We conclude that plaintiffs' claim, as alleged, arises out of medical malpractice and falls within the realm of the LMMA, and that the trial court erred in denying WJMC's exception of prematurity.

24-C-410                                    5

**APPLICATION of the <u>COLEMAN</u> FACTORS**

In applying the <u>Coleman</u> factors, we take the allegations of the petition as true.

**(1)** ***Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill***

The particular wrong alleged here, WJMC's failure to maintain the CTA equipment and insure it was in proper working condition, resulted in the inability to conduct the CTA, as "recommended," "indicated," or "ordered" by the cardiologist.[2] The inoperable equipment resulted in the inability to properly evaluate Mr. Armand's condition and properly diagnose him. Proper diagnosis is necessary for proper treatment, and diagnosis is certainly a part of that treatment. We therefore conclude the alleged negligence of inadequate equipment maintenance is "treatment related."

In <u>Cook v. Rigby</u>, the patient's doctor used a Cosgrove Valve Retractor System to hold the patient's sternal incision apart during a valve repair surgery, and the retractor bolt allegedly fell into the patient's chest during the surgical procedure. <u>Cook v. Rigby</u>, 633382 (La. App. 1 Cir. 4/13/21), 323 So.3d 383, 392, <u>writ denied</u>, 21-663 (La. 9/27/21), 324 So.3d 102. Plaintiffs argued therein that hospital's failure to account for how many bolts were in the Cosgrove Valve Retractor System prior to and after surgery, failure to inspect the functioning of the device and security of the bolts prior to surgery, and failure to notify that a bolt was missing, were unrelated to medical treatment and did not involve dereliction of professional skill. <u>Id.</u> at 392. The First Circuit Court of Appeal disagreed and held that ensuring the proper maintenance of equipment at the hospital was directly related to plaintiff's surgical treatment. The Louisiana Supreme Court denied writs.

Similar to <u>Cook</u>, the equipment failure in this case directly affected WJMC's ability to properly treat Mr. Armand. We find that ensuring the proper maintenance

---

[2] Plaintiff's petition (¶ VIII) alleges that the CTA was "recommended." Plaintiff's writ opposition to the trial court states the CTA was "indicated" (p. 11). Relator in its writ application alleges that the CTA was "ordered." We must assume it was "recommended," but our conclusion would be the same regardless.

of equipment is directly related to ensuring Mr. Armand is properly diagnosed and treated. In addition, the Louisiana Supreme Court has also found that the furnishing of a clean and sterile environment, *i.e.,* ensuring proper equipment, for all patients falls under the LMMA. Dupuy v. NMC Operating Co., 15-1754 (La. 3/15/16), 187 So.3d 436, 440-441. Significantly, the Court in Dupuy concluded that the use of the broad term "health care provider, " rather than simply "physician" or "medical doctor," necessarily includes actions which are treatment related and undertaken by the hospital in its capacity as a health care provider—even if those actions are not performed directly by a medical professional. Dupuy, 187 So.3d at 443.

In addition, the LMMA does not limit its application to direct treatment by a physician, as the definition of "malpractice" includes "any unintentional tort … based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient…." La. R.S. 40:1231.1A(13); Dupuy, 187 So.3d at 443; Cook, 323 So.3d 383, 392.

Accordingly, we find that, under the facts presented here, WJMC's alleged failure to "properly maintain and service all equipment" is part of the general duty to render professional services related to medical treatment, and is "treatment related."

Considering the foregoing, we conclude that this factor favors finding this claim within the LMMA.

**(2)** ***Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached***

Expert testimony regarding proper maintenance of the CTA machine from a company familiar with maintaining this type of equipment may be helpful in determining liability in this case, but this case will nonetheless require expert medical evidence. Expert testimony will be needed from the cardiologist as to why the CTA scan was recommended, indicated, or ordered,[2] and how critical it was to have the CTA imaging as opposed to the tests that were performed. Expert cardiology

testimony will be needed to establish, or to dispute, causation. Expert testimony will be needed to establish whether the lack of CTA imaging was a breach of the due standard of hospital care. Similar analyses were applied in <u>Dupuy</u>, <u>Cook</u>, and <u>Arrington v. St. Tammany Parish Hospital District No. 1</u>, 18-215 (La. App. 1 Cir. 10/31/18), 267 So. 3d 618. In <u>Arrington</u>, the First Circuit found that the availability of the proper Alternating Leg Pressure wrap to fulfill the treating physician's order for an at risk patient was "tethered to the patient's medical treatment." <u>Id.</u> at 625.

Having concluded that expert medical evidence will be required to determine whether the appropriate standard of care was breached, we find that this factor favors the position that this claim falls within the LMMA.

**(3)** *Whether the pertinent act or omission involved assessment of the patient's condition*

The purpose of obtaining CTA images was to assess Mr. Armand's condition. How critical the CTA scan, or lack thereof, was will be determined at trial with the assistance of expert testimony. Regardless of the ultimate resolution of that issue, it was certainly "involved" in assessment. The alleged negligent act, WJMC's failure to maintain its testing equipment, prevented WJMC staff from properly evaluating and diagnosing Mr. Armand.

We find that this factor favors finding this claim within the LMMA.

**(4)** *Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform*

The hospital's maintenance of equipment does not occur in the course of treating patients; however, the allegations do fall within the scope of activities the hospital is licensed to perform. The purpose of the hospital licensing law is to protect the public health through the (1) development, establishment, and enforcement of standards for the care of individuals in hospitals; (2) construction, maintenance, and operation of hospitals which, in light of advancing knowledge, will promote safe and

adequate treatment of all individuals in hospitals; and (3) regulation of the operation and maintenance of hospitals in Louisiana. La. R.S. 40:2101. The maintenance of WJMC's equipment involves standards related to patient care, maintenance of the hospital to provide adequate treatment, and the operation and maintenance of WJMC. Considering the purpose and scope of the licensing regulation, WJMC's alleged negligence in maintaining their equipment can be considered to fall within the LMMA.

(5) *Whether the injury would have occurred if the patient had not sought treatment*

In this case, Mr. Armand may have suffered aortic dissection with cardiac tamponade and could have died regardless of whether he sought treatment under the circumstances in this case because the CTA test was never conducted on him to determine his condition. If, however, the equipment had been properly maintained and Mr. Armand had been properly diagnosed after a CTA test, it is possible WJMC would have been able to prevent his aortic dissection.

Although the petition is clear in its allegations on this point, resolution of this factor is still uncertain and speculative, especially in the present absence of expert testimony. Due to this degree of uncertainty, and the burden of proof being on the excepting party, this factor is resolved against inclusion in the LMMA. Williamson, 888 So.2d at 787.

(6) *Whether the tort alleged was intentional*

The tort alleged was certainly unintentional, satisfying this requirement of La. R.S. 40:1231.1 A (13), but it carries no weight in our overall consideration.

**CONCLUSION**

The LMMA and its limitations on tort liability for a qualified health care provider apply *only* to claims "arising from medical malpractice." The allegations and the undisputed facts place this case within the definition of "medical

24-C-410                                                 9

malpractice" as defined by La. R.S. 40:1231.1 A (13). After fully considering and applying the <u>Coleman</u> factors to the allegations of this case, we conclude that plaintiffs' claim that WJMC failed to properly maintain the CTA machine, if proven, would constitute medical malpractice and fall within the provisions of the LMMA.

As a procedural matter, La. C.C.P art. 933 A provides that if the exception is sustained, the matter shall be dismissed, as follows:

A. If the dilatory exception pleading want of amicable demand is sustained, the judgment shall impose all court costs upon the plaintiff. If the dilatory *exception pleading prematurity* is sustained, the premature action, claim, demand, issue or theory *shall be dismissed.*

B. When the grounds of the *other objections* pleaded in the dilatory exception may be removed by amendment of the petition or other action by plaintiff, the judgment sustaining the exception shall order plaintiff to remove them within the delay allowed by the court; and the action, claim, demand, issue or theory subject to the exception shall be dismissed only for a noncompliance with this order.
[Emphasis added.]

La. C.C.P art. 933 B then permits time to amend the petition, but only when grounds *other than prematurity* are the basis for granting the dilatory exception.

We would prefer not to dismiss the petition and permit plaintiffs reasonable time for possible amendment of the petition after the medical review panel's opinion has been rendered. This would avoid the additional expenses of refiling, and would provide the docket number of a pending matter, which are required for conduct of discovery pursuant to La. R.S. 40:1231.8 D(4),[3] if needed, by either or both parties, or by the panel. Nonetheless, La. C.C.P art. 933 A is quite clear and it is mandatory, so we do not have the choice of granting time to amend. Therefore, the petition must be dismissed. See also <u>Dunn v. Bryant</u>, 96-1765 (La. App. 1 Cir. 9/19/97), 701 So.2d 696, 699, <u>writ denied</u>, 97-3046 (La. 2/13/98), 709 So.2d 752.

---

[3] La. R.S. 40:1231.8 D(4) provides:

Upon request of any party, or upon request of any two panel members, the clerk of any district court shall issue subpoenas and subpoenas duces tecum in aid of the taking of depositions and the production of documentary evidence for inspection and/or copying.

**DECREE**

Finding that the exception of prematurity should have been sustained, we grant this writ. Accordingly, we reverse the judgment overruling the exception of prematurity, and sustain the exception of prematurity. The petition is dismissed without prejudice.

**WRIT GRANTED, JUDGMENT
REVERSED, CASE DISMISSED
WITHOUT PREJUDICE**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 28, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-C-410

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD L. FORET (DISTRICT JUDGE)
MICHAEL F. NOLAN, JR. (RELATOR)        SARAH L. JOHNSON (RELATOR)        MICHAEL S. SEPCICH (RESPONDENT)
T. CAREY WICKER, III (RESPONDENT)      THOMAS C. WICKER, IV (RESPONDENT)  VINCENT E. ODOM (RESPONDENT)

### MAILED

DAVIDA F. PACKER (RESPONDENT)
ATTORNEY AT LAW
1100 POYDRAS STREET
SUITE 2950
NEW ORLEANS, LA 70163